UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**LISA ANN DUMONTIER**,

Debtor.

Case No. **08-60050-7**

*MEMORANDUM of DECISION*

At Butte in said District this 13th day of June, 2008.

In this Chapter 7 bankruptcy case, after due notice, a hearing was held April 1, 2008, in Butte on Debtor's Motion to Modify Stay filed March 7, 2008, and on Debtor's Objection to Proof of Claim No. 6 filed by Mike McVicker. Attorney Daniel Sweeney of Butte, Montana, appeared at the hearing on behalf of the Debtor and attorney Harold V. Dye of Missoula, Montana, appeared at the hearing on behalf of Mike McVicker ("McVicker"). Attorney Jamie McKittrick (McVicker's divorce attorney), of Missoula, Montana, testified and Exhibit 1 was admitted into evidence without objection. At the April 1, 2008, hearing the Court granted Debtor's Motion to Modify Stay to allow Debtor and McVicker to seek a final resolution of all matters in their dissolution proceeding now pending in Lake County and identified as Cause No. DR-03-98, which matters necessarily include McVicker's contempt citations against Debtor, but reserved ruling on that part of McVicker's Objection to Debtor's Motion that requested that McVicker be allowed to collect on his debt against any of Debtor's property not listed in Debtor's schedules. The Court's oral ruling is memorialized in an Order entered April 3, 2008. The Court granted the parties until April 11, 2008, to file briefs in support of their respective

1

positions on Debtor's Objection to Proof of Claim No. 6 filed by McVicker and on McVicker's request to allow collection of a nondischargeable property settlement indebtedness from any of Debtor's property which is not property of the estate. Both parties timely filed post-hearing briefs. Consequently, the matter is now ready for decision. This Memorandum of Decision contains the Court's findings of fact and conclusions of law.

## BACKGROUND

The parties presented only minimal evidence at the hearing on the matters now before the Court but the history of these parties is set forth in a Memorandum of Decision entered September 20, 2005, in a prior bankruptcy case of Debtor, and will not be reiterated here other than as necessary to decide the matters before the Court. Debtor filed a voluntary Chapter 13 bankruptcy petition on March 14, 2005, thereby commencing Case No. 05-60598. McVicker filed a proof of claim in Debtor's prior bankruptcy case, which claim was objected to by Debtor. Following a hearing on Debtor's contested objection, the Court entered a Memorandum of Decision and separate Order on September 20, 2005, sustaining Debtor's objection to McVicker's proof of claim, disallowing McVicker's secured claim and instead allowing McVicker's claim as an unsecured, nonpriority claim as it related to Debtor's leasehold interest located on Indian trust land. The basis for the Court's ruling was three-fold. First, the Court found that McVicker's evidence showed that his judgment lien was obtained in Missoula County, but the real property he claimed a judgment lien against was located in Lake County. Pursuant to MONT. CODE ANN. ("MCA") § 25-9-301(2), "[f]rom the time the judgment is docketed, it becomes a lien upon all real property of the judgment debtor that is not exempt from execution *in the county* and that is either owned by the judgment debtor at the time or afterward acquired by the judgment debtor before the lien ceases." (Emphasis added). Second, this Court

2

held that McVicker's argument that he could remove Debtor's house from the Indian trust land upon which it was located spoiled his judgment lien claim because under *Pacific Metal Co. v. Northwestern Bank of Helena* (1983), 205 Mont. 323, 329, 667 P.2d 958, 961, a judgment lien does not constitute a lien on a building which is subject to removal upon termination of a written lease. Finally, the Court concluded that McVicker's judgment lien did not encumber Debtor's leasehold interest because 28 U.S.C. § 1360 does not allow a state law judgment lien to encumber Indian trust land.

Upon appeal by McVicker, the Honorable Donald W. Molloy of the United States District Court for the District of Montana, Missoula Division, in *McVicker v. Dumontier (In re Dumontier)*, CV 05-192-M-DWM, filed September 29, 2008, and filed as Docket No. 133 in Case No. 05-60598, on October 3, 2006, affirmed this Court's ruling concluding that "the deficiencies in . . . McVicker's proof provide a sound basis for affirming Judge Kirscher's ruling sustaining the Debtor's objection to the proof of claim." Although McVicker appealed all three grounds of this Court's September 20, 2005, ruling, Judge Molloy did not consider, and left undisturbed, this Court's ruling that Debtor's home in Arlee, which is located on her father's Indian trust land, did not constitute "real property" under Montana law, and similarly did not consider this Court's conclusion that a state court judgment lien cannot encumber Indian trust land. Debtor's Chapter 13 plan was subsequently confirmed on October 28, 2005, but Debtor later voluntarily dismissed Case No. 05-60598 on April 25, 2007.

Debtor commenced the instant Chapter 7 bankruptcy on January 22, 2008. The instant bankruptcy sadly appears to be a perpetuation of the parties' Sisyphean cycle. Debtor's 341(a) meeting of creditors was held February 13, 2008, and the Chapter 7 Trustee has designated this case as an asset case. McVicker filed a Proof of Claim on March 6, 2008, asserting a secured

3

claim of $106,710.09. Debtor promptly filed a skeletal Objection to McVicker's Proof of Claim on March 13, 2008, arguing that McVicker:

> Has no interest or security against the Debtor's real property. Further, the Debtor states that Mr. McVicker's claim is improper and his interest should be acknowledged by the Court as an unsecured claim.
>
> Finally, the amount claimed by Mr. McVicker is also incorrect and should be corrected. The amount of interest is also not accurate and the basis for his interest is a Judgment Lien that is actually in the form of a Decree of Dissolution, wherein, this court does have jurisdiction over this matter because this obligation is not for maintenance or support of the Debtor's minor child. Mr. McVicker's divorce decree clearly lists the debt as a property settlement obligation.

McVicker countered Debtor's Objection, arguing that Debtor is "judicially estopped from asserting that Mr. McVicker 'has no interest or security against the Debtor's real property' because the Debtor did not schedule her interest in real property" and that the Court's order entered in Debtor's prior bankruptcy case on September 20, 2005, holding that McVicker's claim was unsecured rather than secured, is void under 11 U.S.C. § 349(b)(1)(C).

By separate Order entered March 26, 2008, the Court agreed to take judicial notice of: (1) Debtor's Schedule A,[1] which does not disclose Debtor's purported leasehold interest in property located at 546 Dumontier Road; and (2) the fact that Debtor has not filed a Schedule G. The Court would also note that Debtor's "Chapter 7 Individual Debtor's Statement of Intention" fails to list any leased property, and thus does not disclose whether Debtor intended to assume any existing lease.

## DISCUSSION

---

[1] Debtor lists no property whatsoever on Schedule A. Similarly, Debtor did not list any real property on her original Schedule A that was filed in Case No. 05-60598. Debtor did, however, amend her Schedule A in Case No. 05-60598 on May 21, 2005, to disclose a "Leased Homesite (non-assignable): 2.5 acres of Tribal trust land with Improvements" valued at $0.00.

The parties' present dispute raises an interesting academic question, that in the end, will have no measurable impact on either Debtor or McVicker. At the time Debtor filed her prior Chapter 13 bankruptcy petition in 2005, dischargeability under 11 U.S.C. § 523(a)(15) was determined, after notice and hearing, by either the inability to pay the debts test under § 523(a)(15)(A), or the detriment test under § 523(a)(15)(B), wherein a bankruptcy discharge did not discharge an individual debtor from any debt--

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless--
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

Debtor's confirmed Chapter 13 Plan in her prior bankruptcy case provided for a distribution of "at least $7,500.00" to unsecured creditors whose claims totaled roughly $120,275. Accordingly, McVicker's only hope of receiving anything other than pennies on the dollar in Debtor's prior bankruptcy was to have his claim recognized as a secured claim or to file an adversary proceeding to determine the dischargeability of the property settlement agreement under § 523(a)(15). Under the law as it existed in 2005, once this Court determined that McVicker's property settlement claim, stemming from the parties' Marital and Property Settlement Agreement, was unsecured, it was incumbent upon McVicker to affirmatively seek a determination as to the dischargeability of the marital property settlement debt. This McVicker

5

did not do.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which took effect on October 17, 2005, drastically changed McVicker's rights as they relate to the property settlement obligation owed by Debtor. Section 523(a)(15) now excepts from the discharge of an individual any debt:

> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit; . . . .

The requirement for an adversary proceeding under § 523(c), and the balancing tests in former § 523(a)(15) were deleted. For cases commenced after October 17, 2005, if a debt is not a domestic support obligation, but was "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement," it is excepted from discharge. Accordingly, if McVicker's claim is an unsecured claim, as opposed to a secured claim, McVicker is still free to pursue collection of nondischargeable unsecured debt–against any of Debtor's property--after entry of Debtor's discharge in this Chapter 7 bankruptcy.

The Court to the parties' futile inquiry as to whether § 349 serves to undo this Court's September 20, 2005, Order disallowing McVicker's claim as a secured claim and instead allowing the claim as an unsecured claim.

Section 349, of Title 11, governing the effect of dismissals, provides:

> (a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.
>
> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than

>under section 742 of this title-
>
>>(1) reinstates-
>>>(A) any proceeding or custodianship superseded under section 543 of this title;
>>>(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and
>>>(C) any lien voided under section 506(d) of this title;
>>
>>(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
>>
>>(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349.

The legislative history of section 349 states that "[t]he basic purpose of the subsection [349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." H.R.Rep. No. 95-595, 95th Cong., 1st Sess., 337-38 (1977), S. Rep. No. 95-989, 95th Cong., 2nd See., 48-49 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News, 5787, 6294. Following this legislative background, bankruptcy courts have observed:

>The general idea behind § 349 is that the dismissal of a bankruptcy case should re-establish the rights of the parties as they existed when the petition was filed. . . . Indeed, unless the court indicates otherwise, the general effect of an order of dismissal is to "restore the status quo ante;" it is as if the bankruptcy petition had never been filed.

*In re Derrick,* 190 B.R. 346, 350 (Bankr.W.D.Wis.1995) (citations omitted). The Ninth Circuit Court of Appeals aptly explains that, § 349 "obviously contemplated that on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to the bankruptcy. After an order of dismissal, the debtor's debts and property are subject to the general laws,

7

unaffected by bankruptcy concepts." *In re Income Property Builders, Inc.*, 599 F.2d 963, 965 (9th Cir. 1982).

This Court acknowledges that the claims process, and in particular, the disallowance of claims, is a concept that is unique to bankruptcy law. *See In re Case*, 27 B.R. 844, 847 (Bankr. D. S.D. 1983) (dismissing a case with the understanding that an order disallowing a proof of claim under § 502(b) would be vacated). *See also Mirzai v. Kolbe Foods, Inc. (In re Mirzai)*, 271 B.R. 647 (Bankr. C.D.Cal. 2001) ( "The disallowance of a claim is . . . intended only as a tool for the administration of the bankruptcy estate"). This Court, however, agrees that the application of § 349 is "quite narrow." *In re Ramirez*, 283 B.R. 156, 160-61 (Bankr. S.D.N.Y. 2002) ("Hence, any motion made by a debtor pursuant to section 502(b) against the same claim and the same creditor, which was ruled upon in a previous bankruptcy case filed by that debtor, is ripe for preclusion under the doctrine of *res judicata*"); *Florida Peach Corp. v. Comm'r*, 90 T.C. 678, 684, 1988 WL 31439 (1988) (a taxpayer was precluded from relitigating tax liabilities on the basis that a bankruptcy court's prior order on a proof of claim, which determined the debtor's tax liabilities, was *res judicata*).

This case illustrates perfectly why § 349 does not impact a ruling regarding the allowance of disallowance of proofs of claim. First, a procedural ruling by a bankruptcy court in a prior proceeding regarding the allowance or disallowance of a proof of claim has no applicability in a subsequently filed bankruptcy because such matters are governed specifically in each separate bankruptcy by the Bankruptcy Code and Rules. For instance, 11 U.S.C. § 501 states that "[a] creditor or an indenture trustee may file a proof of claim." F.R.B.P. 3002(a) then directs that unsecured creditors "must file a proof of claim or interest for the claim or interest to be allowed" and under F.R.B.P. 3002(c), "a proof of claim is timely filed it if is filed not later than 90 days

after the first date set for the meeting of creditors".  By dismissing her 2005 bankruptcy case and filing the 2008 Chapter 7 asset case, creditors were granted a new opportunity to timely file proofs of claim in accordance with a newly established bar date.  Thus, if a creditor failed to file a proof of claim in Debtor's 2005 case or filed a tardy claim, that creditor would have another opportunity to file a timely claim in this bankruptcy case.

Further, Debtor argues that McVicker's claim is incorrect and should be corrected.  By dismissing her prior bankruptcy and filing a new bankruptcy, McVicker is now entitled to claim interest to Debtor's new petition date of January 22, 2008.  Debtor offered no evidence to dispute McVicker's calculation of his claim, which discloses interest of $18.7358 per day.  Federal Rule of Bankruptcy Procedure 3001(f)[2], provides that a proof of claim completed and filed in accordance with 11 U.S.C. § 501 and any applicable Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of the claim.  Thus, if a procedurally proper claim is filed, the objecting party carries the burden of going forward with evidence contesting the validity or amount of the claim.  *In re Weber*, 16 Mont. B.R. 49, 56 (Bankr. D.Mont. 1997); *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991).  However, once the objecting party succeeds in overcoming the *prima facie* effect given to the claim by Rule 3001(f), the burden shifts to the claimant to prove the validity of his/her claim by a preponderance of the evidence.  *In re Allegheny Int'l, Inc.* 954 F.2d 167, 173-74 (3rd Cir. 1992).  Debtor's failure to present any evidence on McVicker's procedural calculation of the claim entitles McVicker to a claim of $106,710.09.  The only question is whether such amount is secured or unsecured.

Similarly, this Court previously denied the allowance of McVicker's claim as a secured

---

[2] Rule 3001(f) reads: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

9

claim in Debtor's 2005 bankruptcy because McVicker failed to prove to this Court that his judgment lien, which at the time appeared to be obtained in Missoula County, was actually obtained in Lake County, thereby entitling McVicker to a judgment lien on any real property of Debtor located in Lake County. On appeal, Judge Molloy went even further, concluding that McVicker's claim filed in Debtor's 2005 bankruptcy was not entitled to *prima facie* validity under F.R.B.P. 3001(f):

> McVicker failed to comply with Rule 3001(d) in filing his proof of claim because he offered no evidence that his security interest had been perfected, which in this instance would require proof that the Settlement Agreement was recorded in Lake County. Mont. Code Ann. § 25-9-301(2). McVicker's failure to comply with Rule 3001(d) means his proof of claim was not executed and filed in accordance with the bankruptcy rules. Accordingly, he failed to satisfy the predicate for prima facie validity set forth in Rule 3001(f).
>
> * * *
>
> [I]n light of the undisputed fact that the copy of the Settlement Agreement attached to McVicker's proof of claim bore no evidence of recordation in any county, I find that the attachment does not constitute prima facie evidence of the validity of the proof of claim. Absent the presumption afforded by Rule 3001(f), Appellant McVicker must resort to other means to carry his burden of persuasion to prove the validity of his claim by a preponderance of the evidence. This he failed to do.

The above reasoning is procedural in nature. By dismissing the 2005 bankruptcy case and filing a new bankruptcy case, Debtor afforded McVicker the opportunity to timely file a proof of claim in this case, which McVicker has done. McVicker's proof of claim in this case cures the procedural defects that plagued the proof of claim filed in Debtor's 2005 bankruptcy. However, the proof of claim filed by McVicker in Debtor's 2005 bankruptcy case was disallowed as a secured claim not only for procedural reasons, but also for substantive reasons, namely that Debtor's leasehold interest in a home, which McVicker argued could be removed from the Indian trust land upon which it was situated, was not real property under Montana law and that

10

McVicker's state court judgment lien could not encumber Indian trust land.

McVicker, in his post-hearing Brief in Opposition to Objection to Proof of Claim filed April 11, 2008, asserts that "the decision which determined that Mr. McVicker did not have a secured claim was a 'very close call' (Cause No. 05-60598-13; Memorandum of Decision, September 20, 2005)." McVicker's above-quoted argument is overly broad and misconstrues this Court's prior ruling. The Court's "close call" reference was with respect to whether Debtor's leasehold interest was real property to which a judgment lien could attach, and not a reference to the overall determination that McVicker's claim should be allowed as a general unsecured claim as opposed to a secured claim:

> For his part, McVicker seeks treatment of the Arlee house and improvements as real property subject to his judgment lien, but his Ex. 6 bases its conclusions upon the removal of the house, which under *Pacific Metal Co.* would mean that his judgment lien would not constitute a lien on the house since it is subject to removal upon termination of a written lease. 205 Mont. at 327-28, 667 P.2d at 960-61. McVicker testified in his deposition, Ex. B p. 26, that he had the impression that he could remove the house if he chose at a later date. Decision on this particular issue is a very *close call*, in part because of Leroy's testimony that he would not allow access to anyone across his land to remove the house. Nonetheless, McVicker's evidence, Ex. 8, plainly gives Lisa a 30 day window after expiration of the lease at the end or 25 or 50 years to remove the house. For that reason the Court concludes under the holding of *Pacific Metal Co.* that McVicker's judgment would not constitute a lien on the Debtor's Arlee house since it is subject to removal upon termination of the lease. 205 Mont. at 327-28, 667 P.2d at 960-61.

Having rejected McVicker's "close call" argument and his reliance on § 349, the Court's inquiry now focuses on whether the Court's ruling that Debtor's leasehold interest in a home was not real property under Montana law and this Court's ruling that McVicker's state court judgment lien could not encumber Indian trust land is *res judicata*. In *Rein v. Providian Fin. Corp.,* 270 F.3d 901, 1098, 1099 (9th Cir. 2001), the Ninth Circuit Court of Appeals ("Ninth

Circuit"), in discussing *res judicata*,[3] wrote:

> *Res judicata*, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating all issues connected with the action that were or could have been raised in that action. *See In re Baker*, 74 F.3d 906, 910 (9th Cir.1996). Claim preclusion is appropriate where: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir.2001); *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 528- 29 (9th Cir.1998).

The United States Supreme Court offers further guidance,

> It is first necessary to understand something of the recognized meaning and scope of res judicata, a doctrine judicial in origin. The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or

---

[3] With regard to the use of the terms of *res judicata* and collateral estoppel, *Paine v. Griffing (In re Paine)*, 283 B.R. 33, 38-39 (9th Cir. BAP 2002), explains:

> When we refer to "principles of res judicata," we are generically referring to the preclusive effects of former litigation. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Hiser v. Franklin*, 94 F.3d 1287, 1290 (9th Cir.1996).
>
> The genre of res judicata principles subsumes two conceptual categories. First, "claim preclusion" includes doctrines of merger and bar that foreclose litigation of matters that have never been litigated and has often been called "res judicata" in a non-generic sense. Second, "issue preclusion," although often called "collateral estoppel," actually includes doctrines of direct estoppel and of collateral estoppel that foreclose relitigation of matters that have been litigated. *Migra*, 465 U.S. at 77 n. 1, 104 S.Ct. 892; *Hiser*, 94 F.3d at 1290; *Duncan v. United States (In re Duncan)*, 713 F.2d 538, 541 (9th Cir.1983); RESTATEMENT (SECOND) OF JUDGMENTS §§ 24 (introductory note) & 27 (comment b); 18 WRIGHT & MILLER § 4402 ("The Terminology of Res Judicata").

> demand, but as to any other admissible matter which might have been offered for that purpose.' *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. *See von Moschzisker*, 'Res Judicata,' 38 Yale L.J. 299; Restatement of the Law of Judgments, ss 47, 48.

*Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

Following the directive set forth in *Rein* and *Sunnen*, this Court finds that McVicker is precluded from relitigating this Court's prior ruling that his claim was unsecured, as opposed to secured, as it relates to any interest in Debtor's leasehold interest located on Indian trust land. The substantive basis of this Court's September 20, 2005, ruling involved the exact same two parties as are now before the Court. In addition, the ruling was clearly entered by a court of competent jurisdiction and was a final judgment on the merits. *See In re Puckett*, 193 B.R. 842, 845 (Bankr. E.D.Ill. 1996) ("a decision allowing or disallowing a claim is a final, appealable order"). Finally, the instant dispute and the prior dispute involve the same cause of action, namely, whether McVicker is entitled to a secured claim against Debtor as a result of the parties' property settlement agreement.

The conclusion that McVicker's reliance on § 349 is misplaced and the further conclusion that *res judicata* does apply to this Court's prior substantive ruling that McVicker's claim is not entitled to secured status as to Debtor's leasehold interest on Indian trust land furthers the policy and purpose of the Bankruptcy Code and Rules and is consistent with Ninth Circuit Law. *See In re Bevan*, 327 F.3d 994 (9th Cir. 2003) ("the allowance of disallowance of 'a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata.'") (quoting, *Siegel v. Fed. Home Loanm Mortgage Corp*., 143 F.3d 525, 529 (9th Cir. 1998)). Moreover, the United Sates Supreme Court

13

explains that: "Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877); *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); 1B J. Moore, Federal Practice ¶ 0.405[1], pp. 621-624 (2d ed. 1974) (hereinafter 1B Moore); Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, Mar. 28, 1973) (merger); id., § 48 (bar)." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). For the reasons discussed herein, the Court thus concludes that McVicker's claim of $106,710.09 is a general unsecured, nonpriority claim, as it relates to Debtor's leasehold interest involving Indian trust land. No evidence exists that confirms whether Debtor still holds any leasehold interest in her father's property located on Indian tribal land, or whether any assumption or rejection of the lease by Debtor occurred.

      This leaves remaining the issue of whether McVicker should be allowed to proceed with collection of his nondischargeable property settlement obligation against Debtor's purported undisclosed leasehold interest in her father's property located on Indian trust land. Based upon the reasoning set forth above, this Court will not permit McVicker, at this time, to proceed with collection of the property settlement obligation owed by Debtor. First, the Court concludes that 28 U.S.C. § 1360 does not allow a state law judgment lien to encumber Indian trust land. In addition, although the finding is a close call, the Court also concludes that, based upon the holding in *Pacific Metal Co.,* 205 Mont. at 327-28, 667 P.2d at 960-61, McVicker's judgment would not constitute a lien on the Debtor's Arlee property since it is subject to removal upon termination of the lease. Based upon my previous ruling in Debtor's 2005 bankruptcy case, which ruling is *res judicata*, it would not be prudent to allow McVicker to proceed with

collection of the property settlement debt against Debtor's purported leasehold interest.

Moreover, in accordance with 11 U.S.C. § 362(c)(2), the automatic stay in this case will continue until the earliest of the time the case is closed, the time the case is dismissed or the time a discharge is granted. Upon request for the United States Trustee, the time to object to Debtor's discharge was extended to June 13, 2008. Absent another extension or an objection to Debtor's discharge, Debtor should receive her Chapter 7 discharge shortly after June 13, 2008. Upon receipt of a discharge, McVicker will be free to pursue any avenue he feels appropriate to seek collection of the property settlement debt. For the reasons discussed herein, the Court will enter a separate Order providing as follows:

IT IS ORDERED that Debtor's Objection to Proof of Claim No. 6 filed by Mike McVicker is SUSTAINED; and the allowance of Proof of Claim No. 6 filed by Mike McVicker as a secured claim is DENIED and Proof of Claim No. 6 filed by Mike McVicker shall instead be allowed as a general, unsecured nonpriority claim in the sum of $106,710.09.

IT IS FURTHER ORDERED that Mike McVicker's request to allow collection of a nondischargeable property settlement indebtedness from any of Debtor's property prior to the termination of the automatic stay is DENIED.

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana